UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No.  18 CR 10213 |
| v. | ) | |
| | ) | |
| | ) | 18 U.S.C. § 201(b)(1) |
| HECTOR SANCHEZ | ) | (Bribery of a Public Official) |
| | ) | |
| | ) | Asset Forfeiture |
| | ) | 18 U.S.C. § 981(a)(1)(C) |
| | ) | & 28 U.S.C. § 2461 |

SEALED

**INDICTMENT**

The Grand Jury charges:

**GENERAL ALLEGATIONS**

At all times material to this Indictment,

1.　　Hector SANCHEZ was a resident of Dracut, Massachusetts.

2.　　SANCHEZ was President and co-owner of P&S Construction, Inc. ("P&S"), a corporation organized under the laws of Massachusetts in or around January 2001 and headquartered in Chelmsford, Massachusetts.  P&S was in the business of providing general contracting and related construction services under contracts with various agencies of the federal government.

3.　　The United States Department of the Navy (the "Navy") is an agency of the United States within which the United States Navy and Marine Corps are organized.   The Navy awards millions of dollars' worth of contracts to government contracting entities such as P&S each year.

4.　　The Naval Facilities Engineering Command ("NAVFAC") is an organization within the Navy that, among other things, is responsible for planning, building, and maintaining

sustainable facilities for the Navy.  NAVFAC is headquartered in Washington D.C. and maintains command centers inside as well as outside the continental United States, including NAVFAC Far East, which is headquartered in Japan and has an office located in the Republic of Singapore.

5.      "PUBLIC OFFICIAL" was a fulltime Federal Acquisition Branch Director and Contracting Officer for the NAVFAC Far East, Facilities and Acquisition Division, in the Republic of Singapore ("NAVFAC Far East").  As an Acquisition Branch Director and Contracting Officer assigned to NAVFAC Far East, PUBLIC OFFICIAL acted for and on behalf of the Navy in connection with government contracts awarded by NAVFAC Far East, under or by authority of the Navy.  PUBLIC OFFICIAL's responsibilities included, but were not limited to, ensuring performance of all necessary actions for effective contracting, ensuring compliance with the terms of contracts, and safeguarding the interests of the Navy in its contractual relationships.  PUBLIC OFFICIAL performed a variety of official duties as both the procuring and administering Contracting Officer for NAVFAC Far East, including, but not limited to: (i) determining contract acquisition strategy; (ii) reviewing and approving contract awards, modifications, and task orders, with a value up to $10 million; (iii) evaluating contractor performance for timeliness, quality, and budgetary compliance; (iv) communicating with contracting specialists in NAVFAC and other government agencies about the past performance of contractors on NAVFAC Far East construction projects; and (v) having final signature authority over liquidated damage assessments.  A liquidated damage assessment essentially is compensation to the government for the harm caused by late delivery or untimely performance under a specific contract.

6.      On or about September 29, 2012, NAVFAC Far East in Japan awarded a Multiple

Award Construction Contract ("2012 MACC") to several contracting companies, including P&S.

The 2012 MACC required satisfactory commencement and completion of work by each

company awarded individual task orders under the contract over the next several years.  The

2012 MACC also contained, among other things, a liquidated damages clause for failure of any

contracting company to complete the work within the time specified in the contract.  The amount

of liquidated damages payable to the government, if any, was specified in individual task orders

based upon each calendar day of delay until the work was completed or accepted.

7.      On or about September 22, 2014, NAVFAC Far East awarded Task Order 7 under

the 2012 MACC to P&S totaling approximately $268,517.98 for, among other things, the

replacement of a drop-arm security barrier at the entrance of the Berth area, PSA Sembawang,

Singapore, with a delivery date of March 23, 2015, that was later extended to May 9, 2015.

8.      On or about September 26, 2014, NAVFAC Far East awarded Task Order 10

under the 2012 MACC to P&S totaling approximately $778,162.37 for, among other things, the

repair of perimeter fencing at PSA Sembawang, Singapore, which is the location of the Navy

Region Center Singapore, with a delivery date of April 23, 2015, that was later extended to July

7, 2015.

9.      On or about January 5, 2016, NAVFAC Far East issued a final Contractor

Performance Assessment Report ("CPAR") for P&S with respect to Task Order 10 under the

2012 MAAC.  A CPAR, among other things, documents the evaluation of a contractor's

performance under a government acquisition contract and provides important information that

NAVFAC and other agencies rely upon when making decisions to award future government

3

contracts and task orders. In the January 5, 2016 CPAR, NAVFAC Far East gave P&S an "unsatisfactory" rating for schedule compliance, among other ratings. NAVFAC Far East further noted that it was considering an assessment of liquidated damages against P&S due to P&S's failure to plan, manage, and execute Task Order 10 in a timely manner. PUBLIC OFFICIAL was the contracting official who reviewed the performance evaluation of P&S documented in the CPAR. The amount of liquidated damages at issue in Task Order 10 was later determined to be $46,900. An assessment of liquidated damages against P&S in connection with Task Order 10 could have adversely affected P&S's ability to secure future government contracts. PUBLIC OFFICIAL had final signature authority over the contract modification that would assess liquidated damages against P&S under Task Order 10.

10.     On or about April 25, 2016, NAVFAC issued an interim CPAR for P&S in connection with a number of Task Orders awarded under the 2012 MACC. With respect to Task Order 7, the April 25, 2016, CPAR gave P&S a "marginal" rating for schedule compliance, among other ratings. NAVFAC Far East further noted that it was considering appropriate actions to address the delay in the completion of Task Order 7. PUBLIC OFFICIAL was the contracting official who reviewed the performance evaluation of P&S documented in the CPAR. The amount of liquidated damages at issue in Task Order 7 was later determined to be $22,200. As with Task Order 10, an assessment of liquidated damages against P&S in connection with Task Order 7 could have adversely affected P&S's ability to secure future government contracts. PUBLIC OFFICIAL had final signature authority over the contract modification that would assess liquidated damages against P&S under Task Order 7.

11.     On or about May 19, 2016, PUBLIC OFFICIAL participated in a telephone conference call with SANCHEZ to discuss, among other things, P&S's performance under Task Orders 7 and 10.  During the course of the call, SANCHEZ asked PUBLIC OFFICIAL to change the coding of the poor performance to anything but liquidated damages.  SANCHEZ further asked PUBLIC OFFICIAL in substance, "Is there anything we can do to make this go away?"  PUBLIC OFFICIAL suspected that SANCHEZ was suggesting a possible bribe in exchange for PUBLIC OFFICIAL's official assistance in circumventing any potential liquidated damage assessments against P&S and contacted agents from the Naval Criminal Investigative Services ("NCIS") shortly after the call.

12.     On or about June 3, 2016, at the direction of NCIS investigators, PUBLIC OFFICIAL participated in a consensually recorded telephone conversation with SANCHEZ.  During the conversation, SANCHEZ stated in substance that P&S could not afford to have liquidated damages assessed against the company.  SANCHEZ suggested that he and PUBLIC OFFICIAL meet face-to-face alone and determine if they could "fix" the matter.

13.     On or about June 14, 2016, while NCIS agents conducted covert physical surveillance, SANCHEZ and PUBLIC OFFICIAL met at a restaurant in Singapore and engaged in a conversation that was recorded with PUBLIC OFFICIAL's consent.  During the conversation, SANCHEZ stated that P&S was his company and reiterated that he could not afford to lose his business.  SANCHEZ stated in substance to PUBLIC OFFICIAL, "I definitely need this trade off with you. This is business ... I know that you and I can come to an agreement ...."  SANCHEZ then agreed to pay $10,000 to PUBLIC OFFICIAL in exchange for PUBLIC OFFICIAL's official assistance as a federal contracting officer for NAVFAC Far East in

circumventing the assessment of liquidated damages against P&S under Task Orders 7 and 10.

When PUBLIC OFFICIAL suggested that PUBLIC OFFICIAL might be selling him/herself

"short," SANCHEZ responded in substance, "remember, this is the first time that we're doing

something, okay? Let's keep it up ... This is not a onetime deal ... You know what you need to

do ... I know what I need to do." At the end of the meeting, SANCHEZ and PUBLIC

OFFICIAL agreed to meet the next day in order for SANCHEZ to deliver the $10,000 to

PUBLIC OFFICIAL.

14.     On or about June 15, 2016, SANCHEZ and PUBLIC OFFICIAL met at a hotel in

Singapore while NCIS agents performed covert physical surveillance. There, following a brief

verbal exchange, SANCHEZ handed PUBLIC OFFICIAL an envelope containing $10,000 in

U.S. currency. After the meeting, PUBLIC OFFICIAL met NCIS agents at a predetermined

location and turned over the funds she/he received from SANCHEZ.

15.     On or about August 3, 2016, PUBLIC OFFICIAL participated in a consensually

recorded telephone conversation with SANCHEZ. During the conversation, SANCHEZ stated

in substance, "I told you we're going to continue seeing each other more frequently than – I

mean, we never have the opportunity. But now that we open the doors ... That's why I'm saying

I want to continue working with the Singapore office, specifically with you." SANCHEZ also

stated in substance, "it was a pleasure to meet you, and as I told you, and we definitely want to

keep going, this relationship, more and more."

16.     On or about November 30, 2016, SANCHEZ met PUBLIC OFFICIAL at the

NAVFAC Far East office in Singapore. During their recorded conversation, SANCHEZ asked

to meet PUBLIC OFFICIAL outside PUBLIC OFFICIAL's office because the "walls have ears."

SANCHEZ told PUBLIC OFFICIAL in substance, "we got to keep the relationship [going] ... This is not a onetime deal."

17.    On or about December 2, 2016, while NCIS agents performed covert physical surveillance, SANCHEZ met PUBLIC OFFICIAL at a club in Singapore.  During their recorded conversation, SANCHEZ asked PUBLIC OFFICIAL what could be done about "the rating," referring to the poor ratings NAVFAC Far East had given P&S in the CPARs for failing to complete Task Orders 7 and 10 on time.  PUBLIC OFFICIAL explained that one of his/her supervisors was giving PUBLIC OFFICIAL a difficult time with reviews and assessments. PUBLIC OFFICIAL told SANCHEZ that his/her supervisor would leave the NAVFAC Far East Office in Singapore in approximately six months.  SANCHEZ told PUBLIC OFFICIAL that he needed the best "report," referring to the CPAR for P&S, that PUBLIC OFFICIAL could give P&S.  SANCHEZ noted that agencies review PUBLIC OFFICIAL's report (CPAR) when P&S bids on other jobs internationally.  During the meeting, SANCHEZ handed PUBLIC OFFICIAL an envelope containing a stack of U.S. currency bound with a rubber band, saying in substance, "this is my gift for you."  The envelope was placed in a folder along with two invoices related to Task Orders 7 and 10 which, if paid, would have closed out the task orders and effectively left no money to withhold from P&S as liquidated damages.  Following a brief verbal exchange, SANCHEZ stated, "Okay.  Okay.  So no LDs [Liquidated Damages]," to which PUBLIC OFFICIAL responded, "Correct."  SANCHEZ acknowledged that he had to "wait six months ... which is going to hurt me," but that, "I told you [PUBLIC OFFICIAL] if this didn't work, I'm not going to force you or – I mean, to take any chances that you cannot ... We got to work together," to which PUBLIC OFFICIAL responded, "And I think we are."  SANCHEZ stated in

turn, "Okay. Yes we are ...." After the meeting, PUBLIC OFFICIAL turned the folder over to

NCIS agents. Inside, investigators found the invoices related to Task Orders 7 and 10 and an

envelope containing $5,000 in cash.

[Intentionally left blank]

## COUNT ONE
### 18 U.S.C. § 201(b)(1) –Bribery of a Public Official

18.   Paragraphs 1 through 17 of this Indictment are re-alleged as though fully set forth herein.

19.   On or about June 15, 2016, in the Republic of Singapore,

### HECTOR SANCHEZ,

the defendant, did directly and indirectly corruptly give, offer and promise a thing of value, that is $10,000 in United States currency, to a public official, namely PUBLIC OFFICIAL, with intent to:

    a.   influence an official act, and

    b.   influence PUBLIC OFFICIAL to commit and aid in committing and to collude in, and allow, any fraud, and to make opportunity for the commission of any fraud, on the United States, and

    c.   induce PUBLIC OFFICIAL to do an act and omit to do an act in violation of his/her lawful duty,

that is, to influence PUBLIC OFFICIAL (i) to prevent the assessment of liquidated damages against P&S under Task Orders 7 and 10;  (ii) to exert pressure on and to advise other public officials within NAVFAC Far East to perform an official act, namely to prevent the assessment of liquidated damages against P&S under Task Orders 7 and 10, intending that such advice would form the basis for that official act by one or more other officials; (iii) to provide a false positive review and rating of P&S's performance under Task Orders 7 and 10 in the Contractor

Performance Assessment Reports; and (iv) to assist P&S, as opportunities arose, with contractual matters in the future.

All in violation of Title 18, United States Code, Section 201(b)(1)(A), (B), and (C).

[Intentionally left blank]

## COUNT TWO
### 18 U.S.C. § 201(b)(1) –Bribery of a Public Official

20.     Paragraphs 1 through 17 of this Indictment are re-alleged as though fully set forth herein.

21.     On or about December 2, 2016, in the Republic of Singapore,

### HECTOR SANCHEZ,

the defendant, did directly and indirectly corruptly give, offer and promise a thing of value, that is $5,000 in United States currency, to a public official, namely PUBLIC OFFICIAL, with intent to:

a.     influence an official act, and

b.     influence PUBLIC OFFICIAL to commit and aid in committing and to collude in, and allow, and to make opportunity for the commission of,  a fraud on the United States, and

c.     induce PUBLIC OFFICIAL to do an act and omit to do an act in violation of his/her lawful duty,

that is, to influence PUBLIC OFFICIAL (i) to prevent the assessment of liquidated damages against P&S under Task Orders 7 and 10;  (ii) to exert pressure on and to advise other public officials within NAVFAC Far East to perform an official act, namely to prevent the assessment of liquidated damages against P&S under Task Orders 7 and 10, intending that such advice would form the basis for that official act by one or more other officials; (iii) to provide a false positive review and rating of P&S's performance under Task Orders 7 and 10 in the Contractor Performance Assessment Reports; and (iv) to assist P&S, as opportunities arose, with contractual matters in the future.

All in violation of Title 18, United States Code, Section 201(b)(1)(A), (B), and (C).

[Intentionally left blank]

## FORFEITURE ALLEGATIONS
### 18 U.S.C. § 981(a)(l)(C) & 28 U.S.C. § 2461(c)

18.     Upon conviction of one or more of the offenses charged in Counts One and Two of this

Indictment, the defendant,

### HECTOR SANCHEZ

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(l)(C) an 28 U.S.C. § 2461(c),

any property, real or personal, that constitutes, or is derived from, proceeds traceable to the

commission of the offenses.

19.     If any of the property described in paragraph 18 as being subject to forfeiture pursuant to

18 U.S.C. § 981(a)(l)(C) and 28 U.S.C. § 2461(c), as a result of any act or omission of the

defendant:

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third party;

      c.    has been placed beyond the jurisdiction of this Court;

      d.    has been substantially diminished in value; or

      e.    has been commingled with other property that cannot be divided without
           difficulty;

it is the intention of the United States, pursuant to 28 U.S.C. § 2461(c), incorporating 21 U.S.C.

§ 853(p), to seek forfeiture of any other property of the defendant, up to the value of the property

described in paragraph 18.

    All pursuant to Title 18, United States Code, Section 981(a)(l)(C) and Title 28, United

States Code, Section 2461(c).

A TRUE BILL

FOREPERSON OF THE GRAND JURY

WILLIAM F. BLOOMER
ASSISTANT U.S. ATTORNEY

U.S. DISTRICT OF MASSACHUSETTS; June 28, 2018.
Returned into the District Court by the Grand Jurors and filed.

DEPUTY CLERK @ 12:48 PM
6/28/18

14